IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY JOHNSON, | ) | CASE NO. 1:17 CV 847 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Barry Johnson under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 25. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Johnson, who was almost 54 years old at the time of the administrative hearing,[11] did not graduate high school but has his GED.[12] His past relevant employment history includes work as a hand packager and packing supervisor.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Johnson had the following severe impairments: osetoarthritis of the right hip (status post right total hip replacement); lumbar spondylosis; obesity; bilateral neuralgia paresthetica; affective disorder (unspecified depressive disorder and adjustment disorder with mixed anxiety amd

---

[6] ECF # 12.

[7] ECF # 24 (Commissioner's brief); ECF # 18 (Johnson's brief).

[8] ECF # 24, Attachment 1 (Commissioner's charts); ECF # 18, Attachment 1 (Johnson's charts).

[9] ECF # 17 (Johnson's fact sheet).

[10] ECF # 27.

[11] ECF # 17 at 1.

[12] *Id.*

[13] ECF #11, Transcript ("Tr.") at 68.

depressed mood); and anxiety disorder (unspecified anxiety disorder and panic disorder with agoraphobia).[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Johnson's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which includes: is able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; is able to stand and walk 6 hours of an 8-hour workday; is able to sit for 6 hours of an 8-hour workday; would have unlimited push and pull other than shown for lift and carry; could occasionally climb ramps and stairs, could never climb ladders, ropes[,] and scaffolds; and could occasionally balance, stoop, kneel, crouch[,] and crawl. The claimant has the following non-exertional limitations: can perform simple routine tasks consistent with unskilled work with no fast pace and with superficial interactions with others (meaning of a short duration for a specific purpose); and can perform low stress work (meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility).[15]

The ALJ decided that this residual functional capacity precluded Johnson from performing his past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[14] *Id.* at 60.

[15] *Id.* at 63.

[16] *Id.* at 68.

determined that a significant number of jobs existed nationally that Johnson could perform.[17]

The ALJ, therefore, found Johnson not under a disability.[18]

**B.      Issues on judicial review**

Johnson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Johnson presents the following issues for judicial review:

- Whether the ALJ assigned appropriate weight to the mental medical source statement provided by Dr. Mushkat-Conomy and therapist Fireman.

- Whether the ALJ's determination of Mr. Johnson's physical residual functional capacity is supported by substantial evidence.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

# Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42

---

[17] *Id.*

[18] *Id.* at 69.

[19] ECF # 18 at 1.

> U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . .." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## *2.  Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of

---

[23] 20 C.F.R. § 404.1527(c)(2). The Court notes that the regulatory provisions governing disability insurance benefits and supplemental security income are substantially similar; therefore, the Court may cite to one or both of these programs interchangeably within this order.

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003)).

-6-

controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.* (citing and quoting 20 C.F.R. § 404.1527(d)(2)). This provision is now found at 20 C.F.R. § 404.1527(c)(2). *See* SOCIAL SECURITY ADMINISTRATION, HOW WE COLLECT AND CONSIDER EVIDENCE OF DISABILITY, 77 Fed. Reg 10651, 10656 (Feb. 23, 2012).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in 20 C.F.R. § 1527(c)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather, it reinforces and underscores what that court had previously said in

---

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43] The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[44]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[45] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[46] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[47] or that objective medical evidence does not support that opinion.[48]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Rogers*, 486 F.3d at 242.

[46] *Blakley*, 581 F.3d at 406-07.

[47] *Hensley*, 573 F.3d at 266-67.

[48] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[49] The Commissioner's *post hoc* arguments on judicial review are immaterial.[50]

### 3. *"Acceptable" and "other" medical source opinions*

The regulations[51] and Social Security Ruling ("SSR") 06-03p[52] set out the analytical framework for the ALJ's proper evaluation of opinions of medical sources not considered "acceptable."

Section 416.912 divides medical sources into "acceptable medical sources" and "other medical sources."[53] "Acceptable medical sources" include licensed physicians or osteopaths and licensed or certified psychologists.[54] "Other medical sources" include nurse practitioners, physicians assistants, and licensed social workers.[55] This distinction has several implications in the evaluation of the opinions expressed by these sources.

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three

---

[49] *Blakley*, 581 F.3d at 407.

[50] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[51] 20 C.F.R. §§ 416.902, 416.913, 416.927.

[52] SOCIAL SECURITY ADMINISTRATION, TITLE I II AND XV: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 71 Fed. Reg. 45593 (Aug. 9, 2006). Although rescinded on March 27, 2017 (82 Fed. Reg. 15263), SSR 06-03p was in effect at the time of the ALJ's decision.

[53] SSR 06-03p at 45994.

[54] 20 C.F.R. § 416.913(a).

[55] *Id.* at § 416.913(d).

reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).

Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.[56]

Although generally opinions from an "acceptable medical source" will receive greater weight than the opinion of a medical source, the opinion of a medical source may outweigh that of an acceptable source based on the particular facts of the case, applying the factors for weighing opinions in 20 C.F.R. § 416.927(d).[57] When the ALJ considers the opinion of a medical source other than an "acceptable" one, she must determine the weight given to that opinion and explain the reasons for the weight assigned in the decision.[58]

**B.  Application of standards**

This case presents two issues:

(1)  Johnson relies on a RFC opinion by a licensed social worker. A psychologist co-signed the opinion. The ALJ gave the opinion little weight, in large part because the social worker is not an "acceptable medical source." Did the ALJ properly weigh the social worker's opinion and articulate the reasons for the weight assigned?

---

[56] SSR 06-03p at 45594.

[57] *Id.* at 45595.

[58] *Id.* at 45596.

(2) The ALJ adopted a light-modified RFC. In addition to mental impairments, Johnson had orthopedic impairments of the hip and spine. Does the adopted RFC lack the support of substantial evidence given the evidence of Johnson's physical impairments?

The Court will address each issue in turn.

## 1. *Licensed social worker opinion*

Johnson relies heavily on the Court's opinion in *Pater v. Commissioner of Social Security*.[59] Johnson's counsel conceded during oral argument that (1) in *Pater* the treating source had examined and prescribed a course of treatment for the claimant on multiple occasions with follow up by the therapist[60] and (2) in this case there is no evidence that the co-signing psychologist ever examined Johnson or reviewed the treatment notes of the therapist. In light of this, the ALJ's consideration of the therapist as a non-acceptable or "other" medical source was appropriate.

The ALJ also discounted the therapist's opinion for being done on a "check the box" form that failed to provide any rationale for his opinions outside of a diagnosis.[61] Although Johnson argued this form "**had a basis in the record and notes**,"[62] the brief fails to cite to any evidence in the record to support this contention.[63]

---

[59] *Pater v. Comm'r of Soc. Sec.*, No. 1:15 CV 1295, 2016 WL 3477220 (N.D. Ohio June 27, 2016).

[60] *Id.* at *7.

[61] Tr. at 67.

[62] ECF # 18 at 16 (emphasis in original).

[63] *See id.*

-12-

Substantial evidence supports the ALJ's treatment of the therapist's opinion and the mental limitations incorporated into the RFC.

## 2.   RFC

Johnson underwent a hip replacement on September 9, 2014.[64]  He had therapy thereafter but the notes are limited.[65]  A post-operative x-ray showed no hardware complications.[66] A post-operative state agency reviewing physician opined light work.[67] The ALJ did not reference or weigh the state agency reviewing physician's opinion.[68]

Johnson also alleged impairment of the lumbar spine.  The ALJ discussed the evidence regarding this impairment in her decision.[69]  Two lumbar x-rays note multilevel degenerative changes that of themselves do not support limitations beyond those in the RFC.[70]  Johnson treated with a pain management physician for this impairment, who

---

[64] Tr. at 382-83, 440.

[65] *Id.* at 392, 610-11.

[66] *Id.* at 376.

[67] *Id.* at 85-86, 99-100.

[68] *Id.* at 66-68.

[69] *Id.* at 65.

[70] *Id.* at 323-25, 638-39.

prescribed a TENS unit and physical therapy.[71] Johnson reported to one of his physicians that the TENS unit was helping him substantially.[72]

Just because the record contains substantial evidence to support a different conclusion does not mean that the Commissioner's decision must be reversed – there is a "zone of choice" within which the Commissioner can act and the ALJ was within the zone of choice here. Substantial evidence supports the physical limitations in the RFC. Therefore, the ALJ's RFC finding must be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Johnson had no disability. Accordingly, the decision of the Commissioner denying Johnson disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.


Dated: July 31, 2018                               s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

---

[71] ECF # 18, Attachment 1 at 7-8.

[72] Tr. at 705.